# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 2, 2010

## STATE OF TENNESSEE v. WALTER WILLIAMS

**Appeal from the Criminal Court for Shelby County**
**No. 06-09323   Carolyn Wade Blackett, Judge**

**No. W2009-01482-CCA-R3-CD  - Filed June 7, 2011**

The Shelby County Grand Jury indicted Appellant, Walter Williams, for one count of rape in connection with the rape of his thirteen-year-old daughter. A jury found Appellant guilty as charged. The trial court sentenced Appellant to eight years as a Range I, standard offender. Appellant appeals his conviction. He argues that: (1) the evidence was insufficient to support his conviction; (2) the trial court erred in allowing testimony of an expert witness; (3) the trial court erred in allowing certain questions during the jury voir dire; and (4) the trial court erred in failing to give the missing witness jury instruction. After a thorough review of the record, we conclude that Appellant's argument must fail. Therefore, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J. and JOHN EVERETT WILLIAMS, J., JOINED.

Brett B. Stein, Memphis, Tennessee, for the appellant Walter Williams.

Robert E. Cooper, Jr., Attorney General and Reporter, Lindsy Paduch Stempel, Assistant Attorney General; William L. Gibbons, District Attorney General, Tracey Jones and Paul Goodman, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

When taken in a light more favorable to the State and as accredited by the jury, the witness's testimony showed the following facts. In the winter of 2004, the victim, L.W.,

lived in an apartment with her sister N., her brothers, C., A. and N., her father, and his wife. The victim was thirteen or fourteen years old at the time. On the evening in question, she went to Appellant's room to tell him that his wife and her sister, A., were ready for him to pick them up from work.

Appellant asked L.W. to come into his room and close the door behind her. L.W. did as she was told. Appellant did not turn on the light. Appellant told her to sit on the bed pushed her down on the bed. Appellant held L.W. down throughout the encounter. He pulled her pants down and inserted his mouth into her vagina. L.W. asked Appellant to stop, and she tried to scream. Throughout the encounter, Appellant alternatively told her not to scream and covered her mouth with his hand. Appellant subsequently inserted his penis into her vagina and had sexual intercourse with his daughter. L.W. did not consent.

When Appellant was finished, L.W. returned to her room that she shared with her sister, N. L.W. cried most of the night and was unable to sleep. N. was asleep throughout the night. L.W. did not wake N. up to tell her what had happened in her father's room. In the kitchen the next morning, L.W. asked her brother C. if he had heard anything. C. responded that he had not heard anything. L.W. neither told him why she asked nor what happened the night before in her father's room.

Some months later, L.W. was sitting in the parking lot outside of her father's apartment with her sister, S. L.W. told S. about the night in question. S. was furious. L.W. begged S. not to tell anyone in the family. S. did as she was asked. She did not inform the authorities either.

In early 2005, Child Protective Services ("CPS") was alerted to abuse allegations against Appellant stemming from a report concerning one of L.W.'s brothers. CPS ordered the children out of Appellant's home. L.W. and three of her siblings moved in with S. While L.W. was living with S., S. reported the rape to CPS. Representatives from CPS spoke with L.W., who confirmed what S. had reported.

A few weeks later, L.W. was examined by Elizabeth Thomas at the Memphis Sexual Assault Resource Center. Elizabeth Thomas is a sexual assault nurse examiner at the center. At the time of the examination, L.W. was sixteen years old. Ms. Thomas made three findings with regard to the condition of L.W.'s hymen. Ms. Thomas determined that the opening to L.W.'s hymen was abnormal because it measured fifteen by seven millimeters as opposed to a more normal ten by ten millimeters. Ms. Thomas also found two scars on the hymen. She also found that the hymen was less than one millimeter thick where it should have been two millimeters thick. She concluded that these findings were consistent with a "history of blunt penetrating trauma." Ms. Thomas was unable to determined the date of the injuries.

However, she could determine that the injuries were not recent because they were completely healed. Ms. Thomas later testified that the two scars could also be consistent with rough sexual activity that could have occurred between the incident in question and the examination.

In the November 2006 term, the Shelby County Grand Jury indicted Appellant for one count of rape. The trial court held a jury trial on May 12 and 13, 2009. At the conclusion of the trial, the jury found Appellant guilty of one count of rape. In a separate sentencing hearing, the trial court sentenced Appellant to eight years as a Range I, standard offender to be served at 100%.

Appellant now appeals his conviction.

## ANALYSIS

### Sufficiency of the Evidence

Appellant argues the evidence was insufficient to support his conviction because "[t]he alleged victim's testimony is implausible and contrary to logic." The State argues that the evidence was sufficient.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harri*s, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the

weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Appellant argues that the victim's testimony that she failed to tell her sister immediately after it happened or her brother's the next morning is "implausible and contrary to logic." He also argues that her sister's failure to report the incident immediately after learning of it is also "implausible and contrary to logic." By making this argument, Appellant is asking this Court to substitute its judgment for that of the jury and weigh the victim's credibility. As stated above, this Court is not allowed to do either of these things on appeal. Clearly, the jury found the victim to be credible and found that her version of events was logical.

Rape is defined as:

[The] unlawful sexual penetration of a victim by the defendant . . . accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act;

(2) The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent; . . . ."

T.C.A. § 39-13-503(a)(1), (2). "Sexual penetration" means sexual intercourse . . . ." T.C.A. § 39-13-503(7).

When taken in a light most favorable to the State, the evidence shows that Appellant inserted his penis into the victim's vagina. In other words, Appellant had sexual intercourse with the victim. The victim did not consent to intercourse with Appellant, and Appellant physically held her down in order to accomplish the act. We conclude that the evidence is sufficient to support the jury's verdict of guilty.

Therefore, this issue is without merit.

# Expert Witness

Appellant argues that the trial court erred in allowing Elizabeth Thomas, the sexual assault nurse examiner, to testify regarding her examination of the victim. Appellant argues that the trial court should have prevented her from testifying because the State did not tender her as an expert witness and because her examination of the victim was so remote in time from the incident in question.

The State argues that Ms. Thomas properly testified under Rule 701 of the Tennessee Rules of Evidence as a lay witness. In the alternative, the State argues that the trial court did not abuse its discretion in allowing the testimony because Ms. Thomas's background was sufficient to qualify her as an expert. The State also points out that Appellant was allowed to cross-examine Ms. Thomas about other possible causes of the injuries in the ensuing time between the incident and the examination. Finally, the State argues that Ms. Thomas made no conclusions as to when the injuries occurred.

At trial, the State presented Ms. Thomas as a witness. She first set out her qualifications. Ms. Thomas testified that she examined the victim on February 16, 2006. At this point, Appellant objected on the basis that the examination was too remote in time and, therefore, was not relevant. Appellant argued that it was two years between the incident and the examination, and the State argued that it was a year and a half. The trial court determined that the length of time between the incident and the examination was a jury question.

The State continued its direct examination of Ms. Thomas. She began to testify regarding her findings during her examination of the victim. Appellant again objected to her testimony. Appellant argued that the State needed to qualify Ms. Thomas as an expert. The State argued that "a lay witness could examine bruises, etc." The trial court replied that the State had not tendered her as an expert and stated that the State could present Ms. Thomas's testimony. Ms. Thomas continued her testimony.

Rule 701(a) of the Tennessee Rules of Evidence addresses the admissibility of opinion testimony offered by non-experts. The rule provides, in relevant part:

> (a) If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are

> (1) rationally based on the perception of the witness; and

(2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Tennessee Rule 701(a). The Rule was amended because, prior to 1996, it "precluded any lay opinion if the lay witness could substitute facts for opinion." Tenn. R. Evid. 701, Advisory Commission Comments (1996). Although the 1996 amendment eliminated certain restrictions on opinion testimony, it was not meant to eliminate the distinction between expert and lay testimony. *See* Tenn. R. Evid. 702-706; Neil P. Cohen et al., <u>Tennessee Law of Evidence</u> § 701.3 (3d ed. Supp. 1999). "The distinction between an expert and a non-expert witness is that a non-expert witness's testimony results from a process of reasoning familiar in everyday life and an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992).

In this case, an opinion as to injuries to the victim's hymen could only result from medical training and expertise, as well as, considerable experience. Clearly, Ms. Thomas was not testifying as a lay witness. Therefore, her testimony was not admissible under Rule 701.

However, our analysis does not stop at this point. This Court has previously analyzed a very similar set of facts. In *State v. Roy D. Wakefield*, No. M2005-01136-CCA-R3-CD, 2006 WL 1816323 (Tenn. Crim. App., at Nashville, Jun. 29, 2006), *perm. app. denied*, (Tenn. Nov. 13, 2006), the defendant was convicted of rape of a child. 2006 WL 1816323, at *1. At the trial, a nurse practitioner at Our Kids Center in Nashville testified about her physical examination of the victim and her findings. On appeal, the defendant argued that the trial court erred in allowing the nurse practitioner to testify because she was not a doctor and was not qualified to make any forensic medical determinations. *Id.* at *10. When the objection was made at trial, the trial court ruled that the nurse practitioner could testify under Rule 701 as a lay witness. *Id.* at *12. On appeal, this Court held that the nurse practitioner was not testifying as a lay witness. Therefore, Rule 701 was not applicable. *Id.* at *13. After determining that Rule 701 did not apply, this Court analyzed the facts and determined that even though the nurse practitioner had not been qualified as an expert witness at trial, the testimony at trial supported the conclusion that she was an expert witness. *Id.* Therefore, this Court concluded, the nurse practitioner was qualified to testify as an expert witness and her testimony was permissible pursuant to Rule 702. *Id.* Therefore, to be admissible in the case at hand the proof must show that Ms. Thomas was an expert witness under Rule 702.

Rule 702 of the Tennessee Rules of Evidence governs the admissibility of expert testimony. It provides:

If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Tenn. R. Evid. 702.

Rule 703 of the Tennessee Rule of Evidence provides that:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

Determinations regarding the admissibility of expert testimony are left to the sound discretion of the trial court. *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993). On appeal, our standard of review is whether the trial court abused its discretion by allowing the expert testimony. Before reversing the trial court's determination, we must determine that the record shows that the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999); *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

Rule 703 of the Tennessee Rules of Evidence contemplates three possible sources from which an expert may base his/her opinion: (1) information actually perceived by the expert; (2) information made known to the expert by others; and (3) information reasonably relied upon by experts in the particular field. *See* Tenn. R. Evid. 703; *see also* Neil P. Cohen, et. al., Tennessee Law of Evidence §§ 7.03(3), 7.03(4), 7.03(5) (5th ed. 2005). In other words, Rule 703 contemplates that inherently reliable information is admissible to show the basis for an expert's opinion, even if the information would otherwise constitute inadmissible hearsay. *See* Tenn. R. Evid. 703. It is not uncommon for an expert witness's opinion to be based on facts or data that are not admissible into evidence but are reliable. See Neil P. Cohen et al., Tennessee Law of Evidence § 7.03(4).

-7-

For her qualifications, Ms. Thomas testified that she was employed at the Memphis Sexual Assault Resource Center ("MSARC") part-time. At the time of the trial she had been employed full-time for sixteen years as a professor at the University of Tennessee in nursing. She stated that all nurses who work at MSARC are required to have a minimum of a masters in nursing. In addition, Ms. Thomas has had post-masters training in medical legal death investigation and child and adolescent and adult sexual assault. It is clear that Ms. Thomas is qualified as an expert in child sexual abuse. She has specialized education, training, and experience to support this conclusion. Her testimony was based upon her personal observations during her examination of the victim and her specialized education, training, and experience.

The trial court's conclusion that Ms. Thomas could testify as a lay witness did not have a basis in the rules of evidence. However, we conclude that Ms. Thomas was an expert for the purposes of testifying regarding child sexual abuse. Because Ms. Thomas was qualified to testify as an expert witness, her testimony is permissible under Rule 702.

This issue is without merit.

## Juror Voir Dire

Appellant also argues that the trial court erred in allowing the State to ask potential jurors whether or not they could rely on the testimony of one witness to determine whether a defendant is guilty of a crime. The State argues that the trial court did not err.

"The ultimate goal of voir dire is to [e]nsure that jurors are competent, unbiased, and impartial." *State v. Cazes*, 875 S.W.2d 253, 262 (Tenn. 1994). The appellate courts in this State have determined that it is improper to ask prospective jurors hypothetical questions that seek to commit the jurors to a specific course of action. *Solomon v. State*, 489 S.W.2d 547, 550 (Tenn. Crim. App. 1972). The conducting of the voir dire of prospective jurors is in the discretion of the trial court. *Id.* Therefore, an appeal from a trial court's decision cannot be overturned by this Court unless it is apparent that the trial court abused its discretion. *See State v. Mickens*, 123 S.W.3d 355, 375 (Tenn. Crim. App. 2003).

During voir dire, the State began to ask a juror if she could consider the testimony of only one person who was present during the crime in her decision of the case. Appellant objected to the question. The trial court determined that the question was appropriate. The State subsequently asked the juror, "[I]f a crime was committed and there is one witness, do you believe that you could determine credibility of that one witness and make a decision about the case if there's only one witness?"

We conclude that this is not a hypothetical question attempting to commit a juror to a specific decision. The question posed by the State during voir dire is a question to determine whether a juror *could* base his decision on his determination of the credibility of a single witness presented at trial. This question does not *require* a juror to find a single witness credible and, therefore, a defendant guilty when only one witness is presented. The trial court did not abuse its discretion in allowing the question.

Therefore, this issue is without merit.

## Missing Witness Jury Instruction

Appellant argues that the trial court erred in denying his request for the missing witness jury instruction. He requested the instruction because of the State's failure to call the victim's sisters and brothers as witnesses at the trial. The State argues that the trial court properly denied the request.

The law regarding the appropriate circumstances for giving the "missing witness" instruction was explained by our supreme court in *State v. Francis*, 669 S.W.2d 85 (Tenn. 1984). "[A] party may comment about an absent witness and have the trial court instruct the jury on the failure of an adverse party to call an absent witness when the evidence shows that '(1) the witness had knowledge of material facts, (2) that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and (3) that the missing witness was available to the process of the Court for trial.'" *Francis*, 669 S.W.2d at 88 (quoting *Delk v. State*, 590 S.W.2d 435, 440 (Tenn. 1979)). The mere fact that a party fails to produce a particular person who may have some knowledge of the facts involved does not justify application of the inference against him. However, when it can be said "with reasonable assurance that it would have been natural for a party to have called the absent witness but for some apprehension about his testimony," an inference may be drawn by the jury that the testimony would have been unfavorable. *Burgess v. United States*, 440 F.2d 226, 237 (D.C. Cir. 1970). The inference may not be invoked when it is merely shown that (1) the witness "may have some knowledge of the facts involved," *Francis*, 669 S.W.2d at 88, or (2) the witness is equally available to both parties. *State v. Boyd*, 867 S.W.2d 330, 337 (Tenn. Crim. App. 1992); *State v. Eldridge*, 749 S.W.2d 756, 758 (Tenn. Crim. App. 1988); *State v. Overton*, 644 S.W.2d 416, 417-18 (Tenn. Crim. App. 1982).

When ruling on Appellant's request for the instruction, the trial court stated the following:

I don't know why you didn't subpoena those witnesses if you felt they were important to your case. But, the facts that have been adduced in this case so far do not indicate that any of these parties that you were talking about would have been material witnesses in this case, that could not have been subpoenaed by you.

We agree with the trial court's determination. In *Francis*, our supreme court stated that to support the missing witness instruction, the witness must have had knowledge of the material facts. 669 S.W.2d at6 88. In this case, the material facts were of the rape. Under these particular facts, only the victim and Appellant were material witnesses to the rape. In addition, the victim's brothers and sisters, who were also the children of Appellant, were equally available to be called by either Appellant or the State. We conclude that the missing witness instruction was not required in the situation at hand and that the trial court was correct in its denial of Appellant's request.

Therefore, this issue is without merit.

## **CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE